Good morning. Please be seated. Call the first case. Case number 11-0232, People v. David Hill. Will the attorneys who are making a presentation please approach and state your name for the record and the party you represent. I'm Jessica Panman on behalf of the Office of the State Appellate Defender and I represent David Hill. And I'm Heather Clark on behalf of the people of the state of Illinois. Good morning. We've allotted 30 minutes for this case. Each side will have 15 minutes to argue. The appellant may reserve time for rebuttal. And with that, we will proceed. I'd like to reserve five minutes for rebuttal. Your Honors, today I'd like to argue issues one and two of my briefs, the reasonable doubt argument and the court's failure to give the lesser included offense instruction. Your Honors, the state's main theory of the case was that David Hill was guilty by accountability for the shootings of Romaz Lucas and Charles Barrows when Willis, Arsenio Willis, opened fire in the backyard. The state's theory was that it was a common criminal design between Hill, Willis, and Demurio Williams. Yet, the state's evidence showed that Willis was acting spontaneously and independently when he fired into the backyard. In order to prove Hill guilty of first degree murder and aggravated battery with a firearm by accountability, the state had to prove beyond a reasonable doubt that Hill solicited, ordered, abetted, agreed, or attempted to aid Willis in the planning or commission of the shootings, that Hill's participation took place before or during the commission of the shootings, and that Hill had the concurrent intent to promote or facilitate the commission of the shootings. Well, the state mentions in their brief that since they were coming home from school, that they had to stop along the way to pick up the guns, and therefore they both knew that they each had guns. Was there anything in the record to show that they didn't take the guns to school? No, that is completely speculative, Your Honors. The evidence showed that Hill was not in school at the time of the offenses, that Demurio and Willis were coming from school, and they didn't meet up with Hill until they were almost at Demurio's house. They were within a block of his house. And there's no evidence on the record that they made a pit stop in between that one block to go and get guns or anything like that. Demurio's testimony was clear. He said that he didn't know that either one of them had guns. Nobody showed each other their guns. There was no conversation about guns during that time that they walked through the backyard. That neither party talked about a confrontation occurring in the backyard or who was going to be in the backyard. There's nothing. And so the state's inference to that effect is purely speculative because there's no evidence to support that inference. The case is stated sometimes you're not going to get an exact plan from the testimony of the witnesses. You know, for example, they don't make statements to the police. But here in this case we have a situation where the defendant was in the backyard. He came to the party with a guy who eventually turned out to be the killer. He pulls out his gun first. The person he's fighting with winds up getting shot by the person he arrived with. And then they both flee. You know, there's factors to consider. He didn't call the police. He didn't stick around as a witness. But he goes out to the gate with the person that's shooting. Doesn't common sense say if someone comes in and unbeknownst to you does some shooting, you're not going to run away with that person. You're going to go the opposite direction. I mean, I'm saying, I'll just say, we don't have explicit testimony about a plan. But when you take those circumstances, doesn't it seem to you that they, well, you're not going to say that. It's, you know, I'm saying how would we write that? Right. Well, just to clarify, the witnesses say that Hill and Willis did not flee together. The witnesses say that Hill left before Willis. That Hill left. But there's at least one witness who said they were together. Right. But that was Rosie Elam, and she was totally discredited. Her testimony was undercut on so many levels, Your Honor, that it was completely unreliable. We're looking at sufficiency of the evidence. We're looking to see whether or not there's evidence that the jury, you know, that they apparently believe that. Right. But her testimony, what I'm saying is her testimony was unbelievable. Rosie is the witness who says that Demuriel Williams wasn't even there. Now, Demuriel admits that he was there. His mom admits he was there. His uncle admits. Everybody says Demuriel's there. Rosie testifies Demuriel's not even there. She misidentifies the shooter at trial. She gives so many prior and consistent statements that her testimony is completely undercut on so many levels, Your Honor. The state's contention is that the boys went to the backyard on a mission, on a common design to go and confront Romaz. Now, you're correct. The state can use inferential evidence to show a common design. But here there has to be some evidence, whether it's circumstantial or direct, that there was a prior plan and that he'll have knowledge of a specific prior plan. And here there is nothing to show that there was any plan in place. In fact, when the boys went into the backyard, if they were on a mission to confront Romaz, it would seem as though that would have happened. But when the boys went into the backyard, they never confronted him. Romaz is the person that initiated that confrontation. Romaz confronted Demuriel, and that's how the chain of events started. So the state is painting this picture that the boys walk into the backyard to confront Romaz, and that never happens. Your Honor, in fact, when Willis comes into the backyard, Willis goes and sits down on the porch. You know, not the usual posture for somebody who's on a mission with two other people to go and confront somebody with guns. And so it's like the state is grasping for straws to draw all these inferences to show that there was a plan when there's no evidence of that. And even if you look at the cases that the state has cited, that they cited for being analogous to this case, there's so much more evidence to conclude that there's a plan. You know, even if you look at the case of People v. Flynn that the state recently filed the motion to cite additional authority for, there you have the defendant's own statement saying that, yeah, I was in on the plan to go and commit the murder. I just didn't know that they were going to commit the attempt murder. And so the defendant is the one in Flynn who gives the co-defendant the gun. The defendant is the one who, you know, he goes with them. And so there's evidence of a specific advanced plan. And here, there's just not. There's no evidence of a plan. Your Honor, there's even evidence on the record that Demurio was wearing headphones when he walked into the backyard. So you have Demurio wearing headphones, Willis sitting on the porch, and the boys just go back there. And Romas confronts them after that. And those things just kind of show that this was not anticipated. That this confrontation was not planned out. It was not anticipated. It was something that happened at the spur of the moment, and the boys reacted to it. It was not a common design. There's no testimony that anybody discussed anything, showed any guns, even knew who was going to be in the backyard. Your Honor, the state also argues that we can draw the inference that there was a common design in place by the fact that Hill told Demurio, there's someone shooting dice in your backyard. But yet, there's no evidence that Hill knew that Romas was back there, or that he told either of the two that Romas was specifically back there. Or even that Hill was aware that Romas, that Demurio owed Romas money. There's nothing of that. All you have is the defendant saying, you know, someone's shooting dice in the backyard. You know, they get to the house, and Demurio's mom confirms, yes, they're shooting dice in the backyard. And that's it. Nobody mentions Romas's name or a beat or anything like that. There's just not enough here to draw together some kind of plan that these boys had. Your Honor, the state's evidence showed that Hill's intent when he pulled out the gun was merely to scare and intimidate. Not only did the state fail to prove that there was a common plan in existence, but they also failed to prove, the other way that you can prove intent is that the defendant shared the murderous intent of the principal. And here, there's no evidence of that whatsoever to show that Hill's intent was to kill. Your Honor, the state's witnesses, Charles Barrows and Demurio, say that Hill's intent was clear. Hill pointed the gun to the ground, you know, just to kind of give a warning or intimidate or to scare, and that he did not point the gun at anybody. And, Your Honor, that's exactly what we have in Estrada, where the court reversed the conviction, because the court found that although the defendant may have had the intent to scare, you know, the defendant wasn't in a common plan with the shooter to start shooting after that. The shooting was spontaneous, it was unsolicited, and it was an independent act. So who killed the victim? Which bullet? Well, the ballistics evidence is inconclusive, but the state's main theory is that Willis caused the death of Romas. That's their theory. It couldn't be proven because the ballistics evidence was inconclusive, they find the gun in the backyard, they're not sure who it is, they think it's Hill's, there's no fingerprints on it, and things of that nature. So that's their theory. The main theory of the case is that Hill is only guilty by accountability. So then how do you get the involuntary manslaughter, which is your second point? Well, Your Honor, If Hill wasn't part of it, if Hill wasn't charged with it, wasn't he accountable to the person who actually killed him? If we find that it's a common desire, criminal common desire. Well, if you find that Hill was proven guilty beyond a reasonable doubt, that he was accountable, Your Honor, for the murder, and which my argument is that the evidence is insufficient to show that, but if you do find that, then at the very least, the trial court should have given Hill the opportunity to present the jury with a lesser-included offense instruction of involuntary manslaughter. So we have to remember that the standard for the giving of a lesser-included offense instruction is very low. All that is required is that the defendant be able to show some slight or even very slight evidence supporting the instruction. And here, this court said in People v. Consago, One act that courts have found can constitute recklessness and therefore prompt an instruction on involuntary manslaughter is the pointing of a loaded weapon at another and then the discharge of that weapon after a struggle. That's the classic fact pattern, and that is what we have here. Charles Barrow's testimony alone says that this is exactly what happened. He'll point a gun to scare, they get into a struggle. I think you might have just said something that's inconsistent. You preface your remarks by saying that if we find that Hill is accountable for the actions of his co-defendant, then we should still be looking at involuntary manslaughter instruction. But if he's accountable for the actions of his co-defendant, then we don't have to look at Hill's conduct of pointing the gun to the ground because the co-defendant is shooting people. So I think what you're really trying to say is, and you argued in your brief, correct me if I'm wrong if I'm not understanding your position, you argued in your brief that the State took an alternative position that even if Hill was the person who caused the death, he's accountable for his own actions. And your response to that is, well, if he's the person who caused the death, then his conduct was merely reckless. Is that your position? Correct. Because of the fact that the ballistics evidence was inconclusive, and because of the fact that the State left it open, you know, they argued it both ways. Because of that, you know, Did the State argue it both ways? Well, yeah, in their closing argument they said that both Hill and Willis were the shooters. You know what I mean? They said different things to show that they did not have to prove whose bullet caused the fatal wound. And this is a case where we have multiple shooters, both guns goes off, the victim is killed by multiple gunshot wounds, and the State knew that its ballistics evidence was inconclusive. And so it covered its bases in closing argument and said that we don't have to show whose bullet killed the victim. And for that matter, Hill should have been entitled to rebut that theory that they had. With his theory that, okay, if you believe that, then this was reckless, this was involuntary manslaughter. And there are a plethora of cases that say that this exact fact pattern fits involuntary manslaughter. But the trial court, in their apparent misunderstanding of the law, thought that he could not give the instruction. That was the reason why the court denied the instruction. Not because the court didn't think that there was some evidence of recklessness here, but the court was confused. The court thought that defendants would have to testify in order to warrant this instruction. And the court also believed that the second-degree murder instruction and involuntary murder instruction could not be given simultaneously. Both of those beliefs are wrong. And the State does not dispute that in its brief, that the court's reasons for denying the instructions was wrong. The State's only response to this argument, Your Honors, is that we proved that Willis killed the victim. But they didn't. They did not take that position at trial. But it doesn't matter what the court thought. The question is whether it was the right answer. And I've been on that end of the argument many times as a trial judge, where I had it wrong as the reasoning but right as the answer. Isn't it irrelevant what the trial judge really thought? Well, not necessarily. Because the State argues that this issue should be reviewed for an abuse of discretion. Did the judge abuse his discretion in denying this instruction? And the answer to that question is yes. They do not deny that the State, that the court, I'm sorry, that the court's reasoning for denying this instruction was completely erroneous. Now, I argue for de novo standard review. But in order for this court to affirm on this issue, this court would have to find that there is not even slight evidence on the record that the jury could have concluded that Hill recklessly caused the death of the victim. And under these circumstances where there are two shooters, the victim dies from multiple gunshot wounds. The ballistics evidence is inconclusive. That's slight evidence. If you look at Charles Barrow's testimony, he gives the sum or slight evidence. Charles Barrow says that Hill pulled out his gun, pointed it to the ground, Romaz came over, tried to wrestle the gun away from him, and the gun went off. Now, just taking that testimony alone, that should have warranted the instruction. But the court was confused. The court did not understand the law, and that's why the court rejected the instruction. Your Honor, this issue is not harmless. The jury may well have believed that Hill's conduct was reckless and found him guilty of involuntary manslaughter. The jury struggled with this verdict. They were sequestered. They deliberated for two days. They sent out multiple jury notes asking all kinds of questions about accountability. It's clear in this case that they were struggling with this verdict. So there are cases that say that when the deliberations are taking a long time, when the jury is asking a lot of questions, that that's evidence that the evidence was close. And in this case, this issue cannot be harmless because the jury showed that this evidence was close. Your Honors. If there are no further questions, Your Honor, we'd ask that the State reverse the defendant's conviction. All right. We have some time for rebuttal. Good morning, Your Honors. Heather Firenbrook on behalf of the people. Your Honors. Common design is a fact-driven analysis, and the facts in this case that support accountability are the defendant and the co-defendant's actions, their conduct. As soon as a defendant pulled out a gun and lifted it, it wasn't pointing to the ground. We've got two eyewitnesses that said it was at least at 30 degrees, and one eyewitness said it was level to the ground. As soon as he pulls out that gun, that act set in motion the chain of events that culminates in the murder of one victim and a serious injury to another victim. He's tussling with Romas for the gun, and while that's happening, co-defendant is coming up and starts shooting at Romas on the ground. This is one continuous act, not two separate acts, and through their actions, through the agreement of their actions, common design is proven here. Counsel talks about the guns coming from school. We know two of them were at school, Demurio and Willis, were coming from school. Willis would have to get the gun at some point, and we know from the arguments in the Willis trial, the defendant was in the backyard. He was in Demurio's backyard. He knew Romas was there. We don't have Demurio testifying to that in front of a jury, but the jury in this case could make a very natural inference that these boys talked, and even if they didn't, even if these boys did not discuss the fact that Demurio owed this older guy money, he was gambling in his yard, and he was certain to ask for it, even if they didn't talk about that, the plan is shown through their actions once they get into that yard. The case that you cite, People v. Taylor, it shows, you know, at least there was some plan, some conversation, some evidence that there was a common design. I'm struggling to find out what is the common design of these two individuals when they go into the backyard. Is there any evidence of that? And if not, can you cite a case where there's absolutely no evidence about a plan or common design going in where accountability is shown? I mean, absent something like an armed robbery or something. Well, I think the Flynn case is certainly one where they had a common design to go after one victim, and then one of the groups split off and went after a victim that they had no common design, they had no plan whatsoever to go after that other victim. But they had a common design to do wrong. They had a common design to do wrong, yes. And other than going in the backyard and observing or possibly participating in a dice game in this case, is there any evidence that these two, that David Hill had a plan to commit a crime when he went into the backyard? Well, Your Honor, by pulling out a loaded weapon, he is... Did he have a plan with Hill? The plan is shown through him starting this criminal venture. I mean, he would have been guilty of aggravated assault for pulling out a loaded weapon. Did he have a plan? Again, what evidence is that he had some plan with Hill? The only evidence we have that they had a plan, a preconceived plan before they went in the backyard, are inferences from the record. We can only make inferences that are in our favor from the record and that a rational jury could have made from the record, certainly. We don't have any direct evidence. The appellant liberally used the word spontaneous in her argument this morning. Yes. So tell us what inferences that could be drawn from the record that this was not a spontaneous incident. The fact that the defendant was still wrestling with Romas for the gun when Willis jumped in and started shooting. The fact that it happened together. It's one continuous act. And if any fact that goes to this natural inference that they had a plan, that's it, Your Honor. I mean, as soon as his friend is in trouble, Willis is up and shooting to get to force Romas to the back of the yard. And while he's shooting, defendant is up and running out and co-defendant is right behind him. All the evidence is we have four witnesses that say that these defendants fled together. One before the other for sure. Defendant got out of there right away. And co-defendant is falling out of the fence while shooting directly toward the backyard where Romas had one bullet enter the front of his chest and one bullet enter the front of his thigh. There's some discussion in the briefs about that you can infer that one was actually covering for the other as they were escaping. What evidence do you have of that? To infer that he was providing cover? That Hill was providing cover for... I'm sorry, that Willis was providing cover for Hill. The fact that Willis is shooting at Romas so that he releases defendant, releases defendant and releases the gun so that defendant is now up and out and shooting the whole time the two of them are fleeing out of the gate. That's direct evidence. We have eyewitnesses that see Willis providing that cover for them to flee. The inferences as to their plan, as to a preconceived plan, and the Supreme Court has said that they don't need a preconceived plan. The plan can be inferred from their acts, from how they act together, from them being involved in this criminal venture, which is pulling out loaded weapons in a yard full of people. And as to the reckless instruction, Your Honors, not a single case that counsel relies on involves accountability. Every single case that she relies on, talking about the evidence, the slight evidence, defendant in this case could have been reckless as he's pulling out his gun initially. It doesn't matter. The principle here is co-defendant Willis. Well, but they claim that that's not the position your trial attorneys took. They claim that the state and the trial court took the position that it could have been one or the other, and that if Hill was the person who caused the death, then he's accountable, obviously, for his own actions, and that if Willis caused the death, then he's accountable for Willis's actions. So my question to you is, if Hill caused the death, and you can't show by forensic evidence that he didn't, if Hill caused the death, then how is this not involuntary, at least deserving of an involuntary manslaughter instruction? There's plenty of cases that say that if you shoot into the ground or if you take a gun out, point it to the ground, or even if you point it into a crowd, or you shoot in the air, that you're entitled to an involuntary manslaughter instruction. Absolutely, absolutely. If you caused the death. But, Your Honor, the evidence here, of course, in closing arguments, we argued to the jury that they were acting together. The language that she cites, the language in the briefs, we were arguing their common design in this whole criminal venture. However, the evidence points to, strongly points to, Willis being the principal here. Because defendant's gun is on the ground. We know the gun on the ground is not the gun that fired the bullet that killed Romas. We know that. We know there are two people that have guns. One gun is there, and the other gun is gone. So defendant doesn't have a gun in his hand. Romas is not shot at close range. We know that from the autopsy. He shot, it was not, neither bullet was at close range. Both were entering the front. And Romas is seen by several eyewitnesses firing in the direction of Romas as he's fleeing. And defendant's gone with no gun. So the evidence here for the jury was very strong. Didn't the gun go off, allegedly, according to one of these witnesses, during the struggle? Yes, it did. And wasn't there multiple gunshot wounds? Yes, there were two gunshot wounds. That's correct. Did your trial assistant argue in the alternative or not? At trial, we argued that they were acting together and they were accountable. That's not my question. My question is, did the trial assistant argue that it doesn't, that the state didn't have to prove who the killer was, and that it could have been either one of them? Did you argue that? Yes, we argued that. But we argued that the defendant was the catalyst. The defendant started this chain of events, and that his co-defendant finished it. That's how we argued to the jury. And the jury heard this evidence. But if the defendant is the catalyst, and he starts this chain of events by committing a reckless act, and he kills him, is he entitled to an involuntary manslaughter instruction? The only way the defendant would be entitled to a reckless manslaughter instruction here is if we separate out these acts. If we have defendant's act starting and ending, and then co-defendant's act starting and ending, and it's one act, the fact that the defendant is still involved and still struggling for a gun, when Willis acts, shows we can't parse this out into two separate acts. And the jury knew that. The jury knew that. That's how it was argued to them. All right. Then who killed the victim? Which one? Co-defendant Willis. Co-defendant Willis. The defendant here started this criminal venture. Co-defendant Willis's gun, our theory at trial, and obviously our argument before this court, was the principle here. And as a result, the defendant is accountable for every action in furtherance of the initial crime, which was pulling out a loaded weapon. And if there are any other questions, Your Honors, I'll conclude. Again, the defendant's act started this chain of events. It ended in the death of one victim and a serious injury to another. Their common design was proven through their conduct, and their agreement was proven through their actions. We respectfully ask this court to affirm defendant's conviction for first-degree murder and aggravated battery with a firearm. Thank you. Thank you. Just a couple of things, Your Honors. The state mentions that Hill's actions set the chain of events in motion, Your Honors, but the question is not whether his actions set the chain of events in motion. The question is, was there a plan? Was there a plan? Was there a plan? And we keep getting back to that. There has to be a plan to show a common design. You can't just use the fact that Willis intervened and tried to help his friend to infer that there was a plan. His actions were spontaneous. He saw his friend struggling with a grown man over a gun, and the gun goes off, and he comes to his rescue. You can't hold Hill responsible for that if there was no plan between the two of them. Your Honors, but what's the standard that we have to apply in evaluating this verdict? I'm sorry. What's the standard of review that we have to apply in evaluating this verdict? Whether any rational try or fact could have found the elements, you know, proven beyond a reasonable doubt. It's a pretty high standard, wouldn't you say? Yes, it is, but under these circumstances, we believe that the state's evidence was insufficient. I mean, the state, halfway through trial after five of their witnesses had already testified, reoffered Hill a deal. You know, they recognized the weaknesses of their case. They tried to give him the plea guilty to, you know, ten years for second degree murder, halfway through the trial. Your Honors. I don't know that that really is even something that we should be allowed to consider. Okay. Plea negotiations are not something that we should be looking at. Right, but under the standard that this Court has to review this issue, Your Honors, we'd argue that there was no evidence of a plan, and that's what we have to look for. And I just want to touch on the lesser included offense instruction very quickly. The fact that the state argued alternatively that either defendant could have killed the victim, Your Honors, that shows that there had to have been some evidence of it, because closing arguments are based on the evidence. So for the state to argue that theory, that shows that there had to have been some evidence of it, Your Honors. And I'd also like to remind the jury that, I mean, I'm sorry, remind the, Your Honors, that the judges, The state's response to me was that you can't parcel these things out into separate acts. You have to, if I understood it correctly, that you have to put all this together, and that if you consider the conduct of Hill and Willis together, then you wouldn't find this to be a situation where you have a separate reckless act. I think that's what the argument was. Well, Your Honors, if, I'm not sure if I understand your question, but Your Honors, if this court finds, Maybe, I know it wasn't airfully worded, I'm sorry, but I would just ask you to respond to that argument that the state made, that it's inappropriate to parcel out the acts when they're acting together. Well, our argument is that here, the jury may have believed that they were not acting together, that there, you know, that there was no common design, and that Hill's conduct was reckless, that he recklessly caused romance theft, and they, the jury should have been given the opportunity to consider that, is what I'm saying. They should have been given the opportunity to fit, to, to, to, to determine if his acts were reckless. I mean, especially when so many cases have this exact same factor. You know, the jury, Hill should have been able to have the opportunity to at least have the jury consider this verdict, Your Honors, and if there's no further questions, we'd ask that this Court will reverse Mr. Hill's conviction pursuant to the first argument for remand for a new trial pursuant to the second argument. Thank you. Thank you. This case is well argued and well briefed, and we'll take a short recess as we will have a panel.